23CA2163 Marriage of Athow 03-20-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA2163
El Paso County District Court No. 18DR30527
Honorable Marcus S. Henson, Judge

In re the Marriage of

Kenneth Athow,

Appellant,

and

Darci Athow,

Appellee,

and El Paso County Child Support Services Unit,

Intervenor-Appellee.

ORDER AFFIRMED

Division V
Opinion by JUDGE SCHOCK
Freyre and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 20, 2025

The Law Office of William Drexler, LLC, William G. Drexler, Colorado Springs, Colorado, for Appellant

No appearance for Appellee

Amanda C. Musselwhite, Colorado Springs, Colorado, for Intervenor-Appellee

¶ 1 In this post-dissolution of marriage case, Kenneth Athow (father) appeals the district court's order denying his request for attorney fees against the El Paso County Child Support Services Unit (CSS) under section 13-17-102, C.R.S. 2024. We affirm.

## I. Background

¶ 2 The district court dissolved father's marriage with Darci Athow (mother) in 2019. In its permanent orders, the court ordered father to pay child support and maintenance to mother. The court allocated a vehicle to mother and directed mother to make a good faith effort to refinance the vehicle loan so it was no longer in father's name. The permanent orders provided that "[i]f [f]ather [was] still on the loan, and [m]other [was] more than one month behind in a vehicle payment[,] [f]ather may make the [loan] payment and offset it against his next maintenance payment(s)."

¶ 3 About a year later, father alleged that mother had abandoned the vehicle and had made no effort to refinance the vehicle loan. Father alleged that he was making the loan payments and deducting those payments from his maintenance obligation. The parties agreed to terminate father's remaining maintenance obligation, and father accepted the remaining liability on the loan.

1

¶ 4 In April 2021, CSS filed a special entry of appearance and notice of intervention "for the limited purpose of establishing, enforcing, [and] modifying child and medical support obligations and . . . reimbursement of public assistance payments."

¶ 5 Mother and father, without CSS's involvement, later agreed to modify father's child support obligation, effective September 2021. The district court determined the modified amount in March 2022.

¶ 6 In the meantime, father filed a motion to determine his child support arrearages and for sanctions against CSS. He alleged that CSS had erroneously claimed that father owed arrearages and was not offsetting his maintenance obligation with the payments he made on the vehicle loan. He further alleged that despite his attempts to resolve this issue, CSS would not explain or correct its arrearages calculation. Father asked the court to award him attorney fees under section 13-17-102 on the ground that CSS's actions and internal errors had unnecessarily expanded the proceedings and forced him to incur unnecessary attorney fees.

¶ 7 CSS opposed father's request for sanctions. It said it had communicated with father in an attempt to resolve the arrearages issue, but father did not provide sufficient evidence to establish that

he was entitled to an offset for his loan payments. CSS took the position that under the terms of the permanent orders, father could use the loan payments to offset his maintenance obligation only if mother was more than one month behind on a loan payment. And father admitted that he had made his payments before mother was a month behind. CSS acknowledged that allowing father to receive credit for his loan payments was equitable, but it did not believe it could give him this credit absent a court order. CSS did not object to modifying the permanent orders to allow for that credit.

¶ 8     After a status conference, the court concluded that an offset was "not [in] strict adherence to the letter of the [c]ourt's prior [o]rder," but it found that under "the spirit of the [c]ourt's prior [o]rder," father would receive credit toward his past maintenance obligations for his post-decree payments on the vehicle loan.

¶ 9     Based on that order, CSS applied father's loan payments to his outstanding support obligation and, after resolving other payment disputes, determined that father had overpaid his support obligation. To reimburse father, the parties agreed to apply a monthly credit to father's support obligation until he was repaid.

¶ 10    Despite this resolution, father continued to pursue his request for attorney fees against CSS, contending that CSS's conduct was a "systemic issue" and had unnecessarily expanded the litigation. Father also sought to conduct discovery on his request. CSS objected to the discovery, arguing that father had not complied with the discovery rules and sought information that went beyond the relevant allegations. The court set limits on the timing and scope of discovery but delayed ruling on the remaining discovery issues.

¶ 11    CSS then moved for summary judgment on father's attorney fee request, arguing that its alleged conduct did not fall within section 13-17-102. In a separate brief, CSS also argued that the court did not have the authority to sanction CSS for its conduct because father had not exhausted his administrative remedies.

¶ 12    The district court denied father's request for attorney fees. It first noted that there was a "legitimate concern" about whether it had the authority to award attorney fees, given father's failure to exhaust administrative remedies. But the court went on to conclude that even if it could consider father's request, section 13-17-102 did not apply because the alleged conduct did not occur within the context of the judicial proceedings. More specifically, the

4

court found that father's allegations concerned CSS's actions and inactions before it became involved in the case. According to the district court, this meant that (1) "there was no civil action that had been commenced when the offending conduct" allegedly occurred; and (2) the conduct therefore did not involve bringing or defending an action without substantial justification or for purposes of delay or harassment. The court also found that CSS did not unnecessarily expand the proceedings. Based on that ruling, the court denied father's request to engage in additional discovery.

## II.    Analysis

¶ 13    Father contends that the district court erred by concluding that (1) it did not have jurisdiction to award attorney fees because father did not exhaust his administrative remedies; and (2) CSS's alleged conduct did not trigger section 13-17-102. Because we disagree with father's second contention and conclude that section 13-17-102 did not apply, we need not address his first. *See Whiting-Turner Contracting Co. v. Guarantee Co. of N. Am. USA*, 2019 COA 44, ¶¶ 32-33 (declining to address challenge to one ground for ruling when judgment was properly entered on alternative ground).

5

A. Applicable Law and Standard of Review

¶ 14 Section 13-17-102 is an exception to the general rule that each party must bear the expense of their own legal fees. *See In re Estate of Fritzler*, 2017 COA 4, ¶ 26. It allows a court to award reasonable attorney fees in any "civil action" against a party who "brought or defended a civil action, either in whole or in part," that "lacked substantial justification," meaning that it was substantially frivolous, groundless, or vexatious. § 13-17-102(2); *see* § 13-17-102(1), (4), (9)(a). The court may also award attorney fees if "the action, or any part of the action, was interposed for delay or harassment" or if the court finds that the party "unnecessarily expanded the proceeding by other improper conduct." § 13-17-102(4); *see also Roberts v. Bruce*, 2018 CO 58, ¶ 18 ("[S]ection [13-17-]102(4) operates as a clarification of the authority to award attorney's fees as granted in sections 102(1) and 102(2).").

¶ 15 We review the district court's decision not to award attorney fees for an abuse of discretion. *See In re Parental Responsibilities Concerning D.P.G.*, 2020 COA 115, ¶ 32. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable,

6

or unfair, or when it misapplies the law. *Id.* We review de novo the district court's interpretation of section 13-17-102. *Roberts*, ¶ 8.

### B. Application of Section 13-17-102

¶ 16 We agree with the district court that section 13-17-102 did not apply to CSS's conduct under the circumstances of this case. Father's allegations against CSS concerned actions and inactions that occurred entirely outside the court proceedings. In particular, father explained that he received a letter from CSS notifying him that he had an arrearages balance. He alleged that he attempted to dispute that balance directly with CSS but that CSS would not provide him with clear answers, did not communicate with him appropriately, and declined to revise its arrearages determination.

¶ 17 But father did not challenge any conduct CSS did or did not take *in connection with the civil action*. *See* § 13-17-102(2), (4). Indeed, it was not until father filed his request for sanctions (and for a determination of arrearages) that CSS became involved in the judicial proceedings at all. Before that time, CSS's sole actions in the case were to enter its limited special appearance and to notify the court of its *non*appearance at a hearing on unrelated matters.

¶ 18    Thus, even accepting as true father's allegations concerning CSS's conduct in his motion for sanctions, that conduct did not involve CSS bringing or defending a civil action. Necessarily, then, it could not involve CSS bringing or defending a civil action that "lacked substantial justification" or that was "interposed for delay or harassment." § 13-17-102(4). Nor did CSS's conduct "unnecessarily expand the [judicial] proceeding," as opposed to father's efforts to address the arrearages balance *outside* the judicial proceedings. *Id.*; *cf. Bd. of Cnty. Comm'rs v. Kraft Bldg. Contractors*, 122 P.3d 1019, 1026 (Colo. App. 2005) (concluding that the court could not award attorney fees under section 13-17-102 for activity that was not related to that court's proceedings).

¶ 19    Moreover, the record demonstrates that once father filed his motion for sanctions and CSS became involved, CSS's case-related actions were appropriate. The court needed to resolve the parties' dispute regarding the interpretation of the permanent orders provision concerning father's ability to offset his maintenance obligations with his payments on the vehicle loan. In doing so, the court determined that CSS's conduct was in "strict adherence to the

letter of the [c]ourt's" permanent orders, even though the spirit of the order permitted father to receive credit for his payments.

¶ 20 Based on these circumstances, the court properly concluded that father was not entitled to relief under section 13-17-102.

¶ 21 Moreover, because CSS's conduct outside the judicial proceedings could not support an award of attorney fees to father, we reject father's contention that he was prejudiced by his inability to conduct discovery concerning that request. In short, under the circumstances of this case, the requested discovery could have had no bearing on father's entitlement to attorney fees. For similar reasons, we reject father's undeveloped claim that the court erred by not conducting an evidentiary hearing. *See In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 29 (declining to address an appellant's legally and factually undeveloped argument).

### III. Appellate Attorney Fees

¶ 22 Father requests an award of his appellate attorney fees under C.A.R. 39.1. But other than asserting that the case itself concerns the recovery of attorney fees, father does not "explain the legal and factual basis" for an award of attorney fees on appeal. C.A.R. 39.1; *see also In re Marriage of Wright*, 2020 COA 11, ¶ 39 ("Citing the

appellate fee rule as the sole legal basis for an attorney fees request is not sufficient.").  To the extent we could construe father's request as an extension of his argument under section 13-17-102, it fails for the reasons above.  We therefore deny father's request.

## IV.   Disposition

¶ 23    The order is affirmed.

JUDGE FREYRE and JUDGE SULLIVAN concur.